Next argued case is number 20, 1389 McLeod Group, LLC against the United States. Mr. Rector. Thank you, your honors. Good morning. May it please the court. The heart of this appeal is the important distinction between jurisdiction and failure to state a claim. As this court knows, jurisdiction refers to the power of the court to hear and decide a case, while stating a claim refers to whether the allegation of the complaint is sufficient, if proven, to entitle a party to release. In this case, the court below failed to observe that distinction, and as a result, erred. Critically, the only issue raised by the government through a 12B1 motion, and the only issue before this court today, is jurisdiction. And that means the analysis should be grounded on this court's holding in engaged learning in Salazar. Counsel, do you not concede that the BPA is not a contract? That's what it says. No, your honor, we do not concede that. It's possible that a BPA that is labeled, an agreement that is labeled a BPA, could, by its terms, in fact be a contract. And that's our argument here with regard to McLeod's BPA. There are terms in McLeod's BPA that create mutual obligations for both parties that are not present in the cases that the government relies upon, and that the lower court relied upon. Well, the government is not obligated for any funds, and McLeod was only obligated to show up for a meeting. That's not quite right, your honor. It's true that the contract says, it's true, I'll call it the agreement. It's true that the agreement says, this is not a contract. We don't dispute that. However, as this court has held on multiple occasions, the label that is applied to an agreement is not controlling. Rather, you have to look at the terms of the agreement and determine what, in fact, that agreement is. Is it a contract? Is it a BPA? Is it some other type of agreement? As to the funding, your honor, it's true that the contract says there is no funding assigned to the agreement when issued. However, we're not relying on funding as the basis for arguing that there was, in fact, consideration provided to McLeod. But that's what you want out of the contract, money, which requires funding. It does, your honor. But the fact that there is no funding when the BPA is issued doesn't mean that there's not an agreement between the parties, a contract between the parties. The agreement said, very importantly for McLeod, that whenever the government had a solicitate or whenever they had a requirement for work that was within the scope of this particular statement of work, McLeod would be given an opportunity to bid on that. Now, it was not given that opportunity, in fact. That's the basis for the underlying claim. Could you point us to where in the blanket purchasing agreement it obligates the government, DHS here, to notify McLeod of a particular service that it needs that then obligates the government to hear any request or any bid by McLeod? My understanding of the BPA by terms says any task orders that the government seeks will be done in accordance to certain procedures in Section 2.17. And then 2.17 says whenever the government contemplates a task order for McLeod to serve service, then the government will ask for a quote request from McLeod. And so, in that sense, the obligations from the government in this agreement rest on the government first deciding for itself that it wants to use McLeod for a given service and then follow the procedures for issuing a task order. I guess another way of saying it, sorry if I'm sounding convoluted, is I don't see anything in the BPA here that requires and obligates the government to use McLeod anytime the government decides that it wants the particular service that's contemplated in this agreement. I don't see anything in here that constrains the government to basically eliminate competition when it wants a given service. Your Honor, the obligation appears at page Appendix 89 in paragraph 2.17.2. Right, and this is under the heading of 2.17 ordering procedures, right? That is correct, Your Honor. And the sentence says the terms of this BPA require that whenever an order is contemplated, the BPA holder shall receive a request for quotation. And you're exactly right that it does not say whenever the terms require or the government needs a certain thing, it will be ordered under the BPA. That would be a requirement contract. And we're not arguing that this is a requirement contract. But the fact that the BPA commits the government to provide McLeod with a request for quotation whenever an order is contemplated is nonetheless meaningful. And it comes close to a requirement type contract. It means that the government has to give McLeod the opportunity to bid on the work. And that's a meaningful opportunity, Your Honor. And it was not provided under the terms of this contract because of the retaliation that you've alleged in the complaint. So, it's true that there is nothing in the contract that guarantees that McLeod will receive an order for a particular work. But the contract does commit to provide McLeod an opportunity to bid for that work. And they were selected under a competitive acquisition as the only holder of the BPA. So, there's a built-in opportunity for McLeod to be able to win the work in response to any request for quotation. And what happened is, as a result of the retaliation that's alleged in the complaint, that work was diverted to a different contractor and McLeod did not receive a request for quotation whenever the agency had a need for work that was within the scope of the BPA. You and I might have a different reading of the meaning of 2.17.2, but at a minimum, would you agree that there's nothing in this BPA that obligates the government to narrow the competition pool for contracting for a given service? The ordering procedures refer to the FAR, R8.405-3B2. And in that section of the FAR, it requires the government to get at least three proposals in response to a particular need. So, McLeod is in a preferred position because it's always going to be one of those three that the government goes to whenever it has a need for these services. And it has previously won this BPA against its competitors for these exact services. So, it's a position of preference, I would say. Well, let me be clear. There's nothing-there's no promise by the government to confine the number of possible competitors like there was in ACE Federal. Is that fair to say? The regulation says there's nothing, Ron, that requires them to confine the number. That's correct. The regulation said a minimum of three. Ron, I have another question. What is the status of the other two counts of the complaint that were not dismissed? Is litigation proceeding? It is, Your Honor. And we are proceeding on those counts. However, those counts will not provide the full relief that was thought of in the original complaint. By dismissing the three counts that it did, the court eliminated the basis for roughly 80% of the damages that were originally claimed. Okay. Anything else that you need to tell us? Should we save you rebuttal time? I'd like to save my rebuttal time, Your Honor. Okay. Thank you. We'll hear from the government. Ms. Murphy? May it please the Court. Your Honor, this appeal is focused mainly on one issue, and that is whether McLeod's blanket purchase agreement with the Department of Homeland Security is a contract for purposes of invoking trial court subject matter jurisdiction. Well, isn't it more complicated in terms of the issues of retaliation and improper purchase? Well, the issues of retaliation, Your Honor, and further to the question you just asked, Judge Newman, the issue of retaliation is still present in the task order claims that survive the dismissal of the claims that related solely to the BPA. Because under this court's binding precedent, a BPA like McLeod, which indicates that it's not a contract and which doesn't obligate the parties in any way, is not a contract and can't be used to invoke the court's subject matter jurisdiction. Okay. Thank you. McLeod argues that its BPA may be a contract and then asks the court to remand its claims to the trial court to allow them an opportunity to prove as much. But their request flies in the face of both the plain language of the BPA itself, which says it's not a contract, and the binding precedent of this court, which indicates that BPAs like the one at issue here are frameworks for future contracts and cannot be used to invoke the trial court subject matter jurisdiction. What's the binding precedent? Is it Cruiser? It is, Your Honor. Cruiser. Of course, that relates to the particular aspects of that BPA. Isn't that right? Well, our position in that case was not limited to the BPA in that case. The court's holding was broader than that. The court looked at the BPA there, of course. But the question presented was whether the BPA, whether it presented a well-pleaded allegation, the contractor presented a well-pleaded allegation that the BPAs between the contractor and the United States constitute a binding contract sufficient to establish Tucker Act jurisdiction. And in that case, looked at the BPAs, which are quite similar to the BPA at issue here, and said, no, they're frameworks for future contracts. The parties are not obligated. And there was no language there that limited the holding in Cruiser to that case. McClatchy points to a sentence where the court inserted the contractor's name, Cruiser, but that in no way and the court in no way said our holding here is not applicable in any cases going forward. Can you hold on a second? Are you suggesting, is it your position that any time an agreement is labeled blanket purchasing agreement, then our opinion in Cruiser holds that such an agreement with that label is not a contract? No, Your Honor. That's not the government's position at all. Okay. Then that's, I think, what Judge Lori was getting at, which is our understanding of the Cruiser's opinion is that you have to explore the content of a specific BPA and figure out to what extent there is some kind of mutuality of consideration and obligations of the parties. Correct. And the government's point here is that the BPA here, McCloud's BPA, is not materially distinguishable from the BPAs in Cruiser. Because, again, the BPAs in Cruiser did not obligate the government. And here, the BPA, McCloud's BPA, specifically says it does not obligate any funds, it is not a contract, and that obligations will begin at the task order level. Well, can you, my understanding is your opposing counsel, it zeroed in on a couple provisions in 2.17 of the BPA here. Can you comment on those? Yes, Your Honor. The language that you discussed at 2.172 absolutely is here. And the government's view is that that language is consistent with the fact that the task order level is where obligations kick in. Specifically, as Judge Chen, I believe, mentioned, there's no obligation here on behalf of the government to use McCloud. And, indeed, it says there will be no payment even for the quotation that is called for by Section 2.17.2. And so the government does not view this provision as providing consideration such that the BPA will be transformed to a contract. Specifically, when it says it's not a contract, and it was clear to the parties, the intent of the parties, that that was not a contract. And so that the obligations will kick in at the task order level. And so what remedy is available, except for the purpose of my inquiry, that there was, indeed, retaliation, improper retaliation? There are claims that remain, Your Honor. Three claims remain. And those claims do include the allegations of retaliation. And the government has not disputed that the court, the trial court, has jurisdiction over those claims. But McCloud's claims, which relate specifically to the BPA, just do not allege a non-frivolous, they are no non-frivolous allegation of a contract here because the BPA specifically says it is not a contract and that it doesn't obligate any funds until the task order level. Okay. Anything else you need to tell us? Yeah, just, Your Honor, with respect to McCloud's argument that the trial court should have handled this as a failure to state a claim as opposed to a jurisdictional basis, I would just again point the court towards Cruisers and remind the court that Cruisers was actually decided after engaged learning, which was referenced by Ms. Director. And so the court was well aware of the engaged learning decision and still made the determination that when you have a BPA that does not obligate the party, it can't be decided that it is not a contract and that dismissal can happen on jurisdictional basis, just as it did in Cruisers. Isn't that a decision on the merits rather than jurisdiction? In Cruisers, it was absolutely a jurisdictional decision, Your Honor. And in the cases that are cited... But there was a contract in Cruisers. No. In Cruisers, there were two blanket purchase agreements like the blanket purchase agreement here, and the court decided on a jurisdictional basis that the claim should be dismissed. They did not reach the merits. And Cruisers, again, was decided in 2014 well after engaged learning and was binding precedent on the trial court. Okay. Any more questions for Ms. Murphy? No. No. Okay. Ms. Director, you have your rebuttal time. Thank you, Your Honor. Engaged learning was effectively not addressed by the lower court. What the court did in a footnote, in footnote five of the court's decision, it acknowledges the standard in engaged learning, but it rejects its applicability. It says, but the Federal Circuit has also specifically held in Cruisers that a BPA is not a contract for purposes of establishing jurisdiction. That's not, Your Honors, a fair reading in Cruisers. Cruisers, the holding in Cruisers says, we hold that Cruisers has failed to present a non-frivolous allegation that the BPAs at issue here are binding contracts. So the holding is clearly limited to the facts of the agreement in front of it. Now, in reconciling that with engaged learning, what other courts have found and what this court should find is that the court needs to accept jurisdiction of the case and then decide the merits-based issue of whether a contract exists. And that distinction between jurisdiction and the merits-based 12b6 motion is critical, Your Honor. The government didn't move or dismissal on a 12b6. It didn't say there is no contract and therefore the complication would be dismissed. Instead, there is no jurisdiction. And the cases that we cited, engaged learning in particular, are very clear that the court need only find a non-frivolous allegation of a contract with the government. We've identified, well, with regard to law, there is no holding that says every BPA cannot be a contract. We've established that. And so there's no provision of law that forecloses the possibility of a BPA being a contract. With regard to the facts of this particular BPA, when the court went and decided the case based on those facts and what that contract says, what that agreement says, it reached across and sua sponte issued a decision on the merits of the case. By reaching the issue of whether there is a contract or not, it went too far. And it did that very clearly by applying the wrong standard. The court said that to establish jurisdiction under the CBA, a plaintiff must establish the existence of an express or implied contract. That's simply not the law. That is not the law under engaged learning. And so the court recited and applied the wrong legal standard. And there's a little bit of a chicken and an egg question here. It's tough to think through and it is confusing sometimes even to the courts. But it's very important to be clear that the first inquiry is does the court have jurisdiction? And then if it does, is there a contract in place that goes to the merits of the case and should only be raised in the context of a 12B6? And, Your Honor, we tried to address this with the court in our brief. We said we offered to brief the matter as a 12B6 if the government moved on that basis or if the court requested it. And the court didn't request it and the government never moved. So we were left with a choice of making or responding to an argument that no one had made and that was not before the court or addressing the narrow jurisdictional issue that had been raised. And so to allow this decision to address the merits of whether there is a contract or not, which we've never had an opportunity to brief, is not appropriate. I'm sorry, you haven't had an opportunity to brief whether this is a contract? We haven't focused on that specific issue, Your Honor. I thought the whole argument that we've been looking at in your briefs and your briefs below was whether or not there was mutuality of obligation, consideration, et cetera. That's the government's argument. We think that that argument is out of step with what they moved on a jurisdictional basis and considering the merits of that issue, we believe, goes too far and is inappropriate. Okay. Any more questions for Mr. Rector? No. Okay. All right. Well, thanks to both counsel. This case is taken under submission. And that concludes this panel's argued cases for this morning. Thank you, Your Honor. The Honorable Court is adjourned until tomorrow morning at 10 a.m.